Here to give you this Honorable Appellate Court of the 2nd Judicial District is now open. The Honorable Susan F. Hutchinson presiding. Please be seated. Your Honor, the first and only case on the docket this morning is 2-24-0416, Brian Fletcher v. Village of Libertyville Police Pension Board, and that is appellate. Arguably on behalf of the appellate, Mr. Brian Fletcher. Arguably on behalf of the appellate, Mr. Jeffrey A. Fitzgerald. Good morning, Counsel and Mr. Fletcher. And Mr. Fletcher, you may proceed when you are ready. Thank you. Stepping forward. Thank you. And adjust the microphone accordingly so we can hear you. Okay. Is that pretty good there? Yes, and you're being recorded as well, so that's why we need the microphone in the correct place. Thank you. Yes, Your Honor. Good morning, I'm Brian Fletcher. I'm presenting myself pro se in an appeal for a denial of my non-duty disability through the pension. I want to cover first, I know there were sanctions on the case, so I just wanted to get that out of the way so I could continue with the merit of my case. My research I did at the McHenry County Courthouse in Woodstock using the law library there, which they use Westlaw, but they do also have AI integrated within that Westlaw, which I was unaware of. So some of the cases that I had cited in my initial brief was bailing errors or date errors or things, but I believe all those cases, I believe that were actual cases. In fact, thank you for addressing that order, which needs to be addressed before we can proceed.  Even if you used something at a courthouse in a library in a courthouse doesn't make it legitimate. It still could be, it could have AI in it, and in fact, as we do our work, we check every case that appears in a brief and how it is used. And in your briefs, we found many, many, many AI references that had nothing to do with this case, or when you cited them, they had nothing to do with the issue you were citing a real case for. And I recognize your pro se, but you're also a different type of pro se. You have some other professional education, correct? Correct. And that means that I'm assuming when you're checking to do any professional issues with your other job or the job that you, your second job that you've taken on after injuring the police, you would look beyond that particular reference to make sure that your information was correct. Wouldn't you?  Did you in this case? I thought I did. What I would do is I would get the cases, and then I'd transfer them to a thumb drive, and then I'd look them up later. In doing my research, I did discover, too, Stanford University did a study in 2024 and found that Westlaw has a 33% to 34% hallucination rate, which I did not know prior to filing my brief. So I really had no way to verify it at the time. But I did my best with it, and I did do a three-triangle motion to try and at least correct the errors of my briefs, which was denied by the courts, and I accept that decision. But I did try to at least put it out there and correct my errors. But if you do not present us with any actual authority or you do not use actual authority properly, it is not our job to advocate on your behalf. Do you understand that? Correct. And if we cannot get to any of your arguments because of your lack of citation or your lack of proper citation, we have to strike everything that's there. Do you understand that? I guess I do, yes. And when you look at AI, as we do every time we open our computer with Google or Westlaw, it gives you a little bit of a warning there, doesn't it? It tells you it's AI or it's whatever you're using, and that is supposed to notify you that there is an issue. Did you pull those cases out and actually read them? I tried to apply them, some I couldn't even find. And why do you think that was? Because they may either have not been decided or they weren't real cases. No. It's more likely they weren't real cases. And so if that were the case, what would you, if you were doing that in your other business, what would you do? I would probably have omitted it had I known that. Okay. Well, you didn't here, did you? I did not. Even if we were to get beyond some of the points that Justice Hutchinson raised, what about the argument that many of the issues you've raised are forfeited because we don't have a complete record? For example, Exhibits A through F that you mentioned in your briefs are not in the record. Those were stricken from the record. Right. But you argue them anyway. They're not in the record. Okay. Also, you never argued before the Pension Board that your condition is, quote, unquote, multifactorial in nature. Okay. I did not realize it at the time until I started doing some of the research. I didn't realize that was necessary until after the fact. Can you explain in your own words the key arguments that you have here? For today? Right. Mine are based on even the IME's references showing there's genetic nature, which definitely affects me, all three of the IME's, but the most common is genetic. And Dr. Robin even mentioned that's refractory, which means my blood pressure is resistant to a lot of medications. And so I'm just going on what's already in the case, because that's what I'd be arguing today based on the IME and my current cardiologist and other medical records. What about all of the physicians who said that had you continued to take your medication, you would have been fit for duty, essentially? Well, they did state that, that they thought it would. I mean, you know what the standard is, right? You've got to demonstrate that those fact findings are against the manifest way of the evidence. What evidence is there for us to say those findings of fact by the board are against the manifest way of the evidence? Just based on my symptomology and the fact I did not do well taking the medications, I know Dr. Economos switched it multiple times, and that was due to an issue, not me not being compliant, but just the fact that I either had side effects or they weren't doing what they were supposed to do. Was there any complaint about your brief in the trial court? As far as what, the side effects? Fake citations. No. Nothing? Not a footnote? No. Well, the record would seem to indicate, sir, that you, in presenting things to the trial court, you were also warned either by motion on the other side or by the court itself that you had problems with what you were presenting, other than just the factual issues that Justice Burkett was talking about, right? Correct. So that would be considered a warning or at least notice, right, depending upon how you file it. But yet you used the same information or similar information when you came here knowing that there was some sort of problem. So this isn't like the first, you know, first part of this battle. We are sort of the third issue in this battle or the third step in this battle, and you've been using the same information throughout all three steps, correct? Right. And I do apologize. I did not realize new evidence couldn't be added on another appeal, so that was my error. Well, there are certain things, as Justice Burkett has identified and as Justice Mullen is ready to identify, we have to follow certain standards of how we prepare and resolve these cases. And without good authority, without authority used properly, if it is good, we cannot do it. And that means that we may indeed need to strike everything that you presented. In addition, counsel on behalf of the board has asked for additional remedies. And additional remedies certainly can include reporting you to the ARDC, which is an attorney registration issue, but maybe other places that you might have to answer or fees, costs, or even some sort of a penalty paid to the court, not to us personally, but to the court. How can you justify what you did when these other issues are out there? I have no response to that. I did not realize it until after the fact. Let me ask this. Did you submit your proposed bystander's report to the trial court for its approval? I don't recall. You understand that that is required by Supreme Court Rule 323. Okay. You didn't submit it to the trial court, but you filed it as a bystander's report. Okay. Your pro se, I recognize that you're pro se, but when you are a pro se you accept responsibility to follow the rules of this court and of the Supreme Court, even though you're not an attorney. Do you accept full responsibility for your conduct? Yes. Okay. In your response to the motion for sanctions, you say no prejudice occurred. How do you figure that? Just that it wasn't willful and wide. You said no prejudice. That's a whole different thing. Willful one is, oh, I did it on purpose, I didn't know, I had a good heart. No prejudice means it didn't do anything to bother the other side, right? Yeah, I did not. But you said no prejudice occurred, so explain that to me. I just didn't think it affected the facts of the case because some of it was spelling errors or a date error, and some were cases, but you're right, I didn't realize there were some that were so fictitious by any means. You also said that, quote, procedural errors by pro se litigants should not bar substantive review in your response to the motion for sanctions. I did. And you cite the Marconi case, and you give us a particular page, 543. I looked at that, I looked at the case, and I didn't see anything in there about pro se litigants. Did I read that wrong? It may have been an error on my part, Your Honor. Well, maybe do you understand the difference between a procedural and a substantive issue? I do not. You come from, obviously, 19 years as a police officer.  Shouldn't there be consequences for your behavior? Besides just maybe striking your brief and dismissing this appeal, shouldn't you pay a penalty for your behavior? If the court deems necessary, yes. I'm asking you, do you believe that it's necessary to send a message that this type of conduct will not be tolerated by this court? Sure, yes. And if you don't agree with the requests of counsel on the other side, or that we should follow those requests, what do you suggest we should do based upon our conversation here this morning? I'm sorry, I didn't expect this conversation, so I don't really have an answer. I was hopeful that we could just continue on with the merits of the case, but obviously that's not an issue, so I'm not even sure what sanctions would even apply directly to me, because it's an unfamiliar territory for me. Well, counsel did cite, and we did cite, and I believe in our order, specific rules that should be consulted. Did you consult those rules, the Supreme Court rules, or anything else identified? I did not. Okay. Justice Mullen, do you have any other questions? Justice Burkett? All right. You may respond to Mr. Goodloe after he's finished, if you choose to do so. Thank you. Thank you, Your Honor. Mr. Goodloe? Good morning, Your Honors. May it please the Court, my name is Jeff Goodloe with Pachowski Goodloe LLC. I represent the Libertyville Police Pension Board. Thank you for the opportunity today. I have three issues I'd like to just briefly address. If I may, the first issue is that the pension board's decision is not against the manifest way of the evidence. The second issue is that the trial court did not err when it granted the pension board's motion to strike. And number three, that sanctions are warranted in this matter. And I'll try to go through them quickly. Competent evidence supports the pension board's decision that the plaintiff unreasonably refused reasonable medical treatment that was safe, effective, and that but for his plaintiff's refusal of that treatment, he more than likely would not be disabled today. All the evidence in the record supports that conclusion. There is no evidence to the contrary. Mr. Goodloe, one thing. He did, the board or the police department, whoever was the actual presenter in that hearing, did present doctors who said if this had happened, this would have happened. Mr. Pletcher comes with some medical knowledge as he approached that particular hearing. And wouldn't his own testimony have some relevance to not only how he felt, but how he, what the medicine was doing to him because he had some evidence other than a normal person presenting in pro se, unless he or she was a doctor in the medical field. That's true. So the pension board could certainly accord weight to the plaintiff's testimony. It's a question of facts. So the question is whether there's evidence in the record to support the board's decision. It's up to the pension board to weigh the evidence, to reconcile conflicts in the evidence. So they could certainly take Mr. Pletcher's testimony into consideration. But when you balance Mr. Pletcher's testimony against all of the medical evidence in the record, at the end of the day, the pension board chose to put more weight on that evidence as opposed to Mr. Pletcher's testimony. Every treating physician, Dr. Economos, Dr. Syed, as well as Dr. Rojas, all indicated that he required these drugs. They were absolutely essential for his condition. All three IME providers testified that these drugs were absolutely essential for his condition, and it was absolutely unreasonable for him not to take these drugs. All IME providers testified that the drugs were reasonable, they were safe, they were effective, and they were medically necessary and that the benefits substantially outweighed the risk of taking these drugs. And all those doctors also testified that but for the plaintiff's refusal to take the drugs and to remain compliant, he would not be disabled today due to non-ischemic cardiomyopathy. So when you balance all of that up against a plaintiff who says, I was taking the drugs, at the end of the day, the evidence in the record does not support that. It does not support that he was taking the drugs and that his condition was refractory. In fact, it shows the opposite. What it shows in the record is that he was not taking his drugs. He was telling to take the drugs, but he routinely stopped. He stopped in 2017 after he went to the hospital and they said take the drugs. He stopped doing it. What happens? He ends up back in the hospital in 2020. Takes the drugs for a period of time, stops again, ends up back in the hospital in 2022. And it suggests that it's refractory. It's not supported by the evidence in the record. And I would point the court to the June 2020 scans when he was admitted to the hospital. His heart was in rough shape. There's no question about it. He takes the drugs for about a period of four months. You look at a scan from October 2020. You compare that scan to the June 2020 scan. Normal ejection fraction, the heart wall had returned to normal. There were normal filling pressures. The ventricle, the atrium, everything was normal. The aorta was normal. So to suggest that it's refractory, there's no evidence to support it, and that's what the IMU provider said. And to suggest that he was taking the pills but having adverse side effects, he wasn't. He admitted that he stopped taking the pills on numerous occasions. So at the end of the day, the Pension Board could certainly accord weight to Mr. Pletcher's testimony, but it chose not to do and questions whether the Board's decisions against the manifest way of the evidence, and it certainly is not. He did not take the pills. The Pension Board can't order him to take the pills. I don't think the court could. Maybe the court could. That's not the issue here. But there's consequence, and the consequence is that you're not disabled then within the meaning of the pension code. It's sad to say that he's not entitled to a pension. He's a deferred pensioner. He has 19 years. He would get 47.5% of his salary attached to rank, but wouldn't he turn 60 years old? That's what he's entitled to. That's what he's vested for. But there's certainly no evidence here to support that he's entitled to a disability pension now. So we would ask your honors to affirm on that particular issue. I'll briefly say that the trial court did not err when it granted the motion to strike, which I think Justice Burkett pointed out. Exhibits A through F were not brought before the Pension Board. They were brought first to the trial court. Any argument that's not brought first before the Pension Board cannot be then raised first on administrative review, and it certainly cannot then be raised for the first time before this court. And that's what the plaintiff has consistently done in this case. So the court was right to strike all of those exhibits as well as the letter and the articles, but more importantly to strike any argument that flowed from any of that material because it simply was not before the Pension Board. And he was represented by counsel before the Pension Board. They had an opportunity to object. We had two hearings. They could have brought whatever evidence in that they wanted and made any of these arguments, and they didn't do it. And because they didn't do it, it's forfeited. It's waived under the law without question. As to the sanctions issue, I admittedly have never filed a motion for sanctions, and I've been practicing law for 20 years. So I did not take it lightly, especially with a pro se litigant. But I was extremely upset about this case, and my client was extremely upset about this case. And I think what makes it so upsetting is that he was put on notice in trial court in my brief, and there is a citation in the brief saying, These are FIT cases, and you have an obligation to comply with the rules just like I do. You know, I just want to interrupt you for one moment. The issue of whether responsibility is resolved, Mr. Fletcher is saying, I take full responsibility for this. Yes, sir. So what sanction or sanctions would you recommend? I think that it makes sense to strike the brief and to dismiss the appeal is, I think, the appropriate sanction. I don't think that's a draconian sanction, given that he was on notice and just completely continued to dig himself a deeper hole. And to hear him say today before this court that he still insists that some of these cases are real cases, I don't know how anybody could stand here and make that argument before this court. So I think striking the brief and dismissing the appeal. You know, financial penalties and paying attorney's fees and things like that, we would leave it, the pension board, to obviously the measured judgment of this court in terms of whether that's appropriate or not. Quite honestly, I think an insurance company paid for me to handle this appeal with the exception of like a $10,000 self-insured retention, I think. But I would leave it up to the court there. But I also think, Your Honors, it's important that the merits of this case are important. The issue is important. So I would hope that the court would address the issue of unreasonable refusal of medical treatment because it's not just this plaintiff with this pension board. You know, I represent a lot of downstate fire and police pension boards, and they're just two articles of the pension code. And there are a lot of articles of the pension code and a lot of people covered by these who are entitled to potential disability benefits. So I think a ruling on the merits today would go a long way to clarifying Lucchese and MULAC and ROSAC. Can I ask a question? Yes, Your Honor. I looked at those cases. Were any of them, do you know of any cases that apply that, I'll call it the sole proximate cause rule? I don't know what you call it. I'm not sure I follow your question, Your Honor. Let me finish it. I'm sorry. Do any of, do you know of any cases that apply what I'll call the sole proximate cause rule? And then I kind of pause there. Like, is that what you call the rule? I want to make sure you understand what I'm talking about. The rule that, in order for you, that if there's proof that the sole proximate cause of your disability is your noncompliance, then, you know, you can't have the pension. Well, I think that all of those cases, I'm sorry. And my question is, do you know of any cases that apply that rule to a non-duty pension? I do. What? Shirley v. Clarenton Hills Police Pension Board applies it. It's just out of the 3rd District, and I have the language. Because the argument in that case, you apply for a line of duty or, in the alternative, a non-duty. And they said, well, you unreasonably refused reasonable medical treatment, therefore you're not disabled. Plaintiff's argument in that case was, well, if you're not entitled to a line of duty, because all the other cases talk about line of duty disabilities, like Mulak and Lucchese, and at a very minimum, you should be entitled to a non-duty disability pension. And Shirley, opinion, rejected that. They said, hell, regardless of the type of pension that a claimant seeks, a compensable disability will not be found if the claimant unreasonably refuses the necessary medical treatment. And it makes sense. I mean, you shouldn't be able to refuse medical treatment on a line of duty disability claim, such that you're not disabled, yet still get a non-duty disability pension. The issue is disability, and that's the first element, whether you're applying for a non-duty or a line of duty disability pension. You have to prove that you're disabled. If you refuse treatment such that you're not disabled, you don't meet the element under either one. So Shirley's the case that's directly on point. Thank you. You're welcome. Well, but if his arguments are supported, and I'm using that word just in this sentence as opposed to as in fact supported, if they're supported by non-cases or cases that are real but not in the proper way, how can we get to those issues if we have nothing to go by? I think you would just have to rely on the arguments that the pension board has raised. It's brief. I mean, you certainly can't rely on any of the arguments the plaintiffs raised because the cases just don't exist. So, I mean, I think if you would get to it by saying the pension board's decision, we would hold that the pension board's decision is not against the manifest way of the evidence. Nevertheless, we're going to strike the brief and dismiss the appeal because of this. I'm concerned that if we do that, though, then it's moot. Potentially. You don't think so? Well, it may be moot. I don't know. Isn't it a bad thing for judges to rule on a moot issue? It is a bad thing for judges to rule on a moot issue. I've been trying to go through this in my head to figure out a remedy that works, and I don't know. But I will say this, and I don't want to step outside of the record. I think that the court can take judicial notice of this issue under, I think, rule 201 of rule of evidence, that whatever sanction the court makes here, if it does impose a sanction, I think it is important to obviously deter future litigants, whether pro se or seasoned litigators, from engaging in this type of conduct because this is not going away. This is only going to get worse, I fear. And it wastes the court's time. It wastes my time. It wastes the court's time. It wastes everybody's time to go and try to figure this out. And if I didn't do this for a living and just do this, I mean, I can imagine trying to figure out what these cases mean and what they're talking about to rectify the situation. Thankfully, I understand these cases, though, and I can tell this is a made-up case. But it's not only important to defer future conduct, but it's important to deter the plaintiff as well from future conduct. And, again, I don't want to go outside the record, but I think the court can take notice that over the summer the plaintiff filed a federal lawsuit now against my client, talks about AI, and all of the allegations arise out of the same facts and circumstances that form the basis of what we're talking about here today. So I think a sanction here from this court saying, if you engage in this type of conduct, here's the repercussion, will go a long way to deterring that conduct from this plaintiff in this other litigation now pending at the Dirksen Center, because I know they will take it very well here. Well, to accomplish your purpose, could you or would it have been some strategy for you to cross-appeal so that your issues could be considered on the merits as opposed to on a stricken brief? That may have made sense to do that. I didn't think of it in that way. I just thought that the Pension Board prevailed on the issue of the Board's decision is not against the manifest way of the evidence, and that was sufficient for our purposes, so I didn't think a cross-appeal was necessary. Only when I learned that here's his brief and he's citing these fake cases again in the appellate court that I thought the motion for sanction was appropriate that I filed the motion for sanction. And you filed counterclaims in the federal case? So I'm not representing the Board in the federal case, and it's on a motion to dismiss right now. Okay. Unless there are any other questions, my client and I thank the Court very much for its time today. Thank you. Thank you, Your Honors. Thank you. Mr. Fletcher, you may respond if you choose to do so. Okay. I just would like to apologize to Your Honors and the Court for my errors. I'm definitely not an attorney, and I don't have a plan to do it ever again. I see how difficult it is. I thought I kind of knew what I was doing, and unfortunately I did not, and I agree we did waste everybody's time here. Are you pro se in federal court as well? Yes, I believe it is set up for that. Well, you would know. Yeah, I mean, it's actually going through my wife. She's the one that filed for a consortium. Did you use any union representation in the original hearing before the Board? Correct, I did. Okay. So it was the lawyer provided or the representatives, the union representatives at that point? It was just a lawyer I hired that worked with pension boards. All right. Anything else, Justice Burkett? Justice Mullen? Thank you. We appreciate everyone's comments here this morning, and we will take this matter under advisement and will issue a decision in due course. Thank you. Thank you.